## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

DWIGHT RANEY,

    Plaintiff,

    v.

DET. KERR #4835, *et al.*,

    Defendants.

Civil Action No.:  JRR-22-2301

## MEMORANDUM OPINION

Dwight Raney, a Maryland prisoner currently incarcerated at Baltimore City Correctional Center ("BCCC"), filed this civil rights lawsuit pursuant to 42 U.S.C. § 1983.  ECF No. 1 (Complaint).  Raney names as defendants Det. Kerr #4835, Cpl. Keel #5637, and Det. Adams #5892 of the Baltimore County Police Department.  *Id.*  Raney alleges that the officers utilized excessive force against him, causing injury.  *Id.* at 2-3.

Defendants have moved to dismiss the complaint or, in the alternative, for summary judgment (ECF No. 16), supported by a memorandum (ECF No. 16-1) (collectively, the "Motion") and exhibits.  Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Court informed Raney that failure to file a memorandum in opposition to Defendants' Motion could result in dismissal of the Complaint.  ECF No. 18.  Raney did not respond to the Motion.[1]

No hearing is necessary to address Defendants' Motion.  *See* Local Rule 105.6 (D. Md. 2023).  For the reasons stated below, the Motion will be granted.

---

[1] Raney filed a Motion for Default and a Motion for Appointment of Counsel (ECF Nos. 19, 20).  The Court denied the Motions but granted Raney additional time within which to respond to the Defendants' Motion.  ECF No. 22.  Despite this additional time, Raney filed nothing further.

I.   **Factual Background**

   A.  **Raney's Allegations**

Raney's Complaint alleges that on April 13, 2021, shortly after 3:00 p.m., he was detained at the Public Safety Building in Baltimore County, Maryland.  ECF No. 1 at 2.  He alleges that, while there, Defendants violently assaulted him.  *Id.*  Specifically, Raney states that, while being questioned, he was "told to take [his] pants off" and his requests for alternative clothing were denied.  *Id.*  Thereafter, "while one hand was cuffed" Defendants Adams and Keel "grabbed, kicked, and hit [him] all over." *Id.* at 2-3.  Meanwhile, Defendant Kerr struck him in the eye "with a closed fist."  *Id.* at 3.

Raney became lightheaded and eventually blacked out.  *Id.*  He was taken to Greater Baltimore Medical Center ("GBMC") for injuries to his eye, neck, back, and wrist.  *Id.*  He notes that the experience was "uncomfortable" and embarrassing because he was "forced to go through the process without pants."  *Id.*  He states that he still suffers from mental trauma, migraines, blurry vision, chronic neck and back pain, and post traumatic stress disorder as a result of the assault.  *Id.*

Raney seeks monetary damages as the remedy for his claims.  *Id.* at 4.

As a supplement to his Complaint, Raney submitted the use of force report related to this incident.  ECF No. 6 (Supplement).  The report confirms that the incident occurred on April 13, 2021, at 3:11 p.m. at the Public Safety Building in Towson, Maryland.  *Id.* at 1.   The report notes that force was used "to protect self or other member" and the initial use of force was successful at gaining "compliance."  *Id.* The force was purportedly used because Raney "attempted to retrieve evidence" in relation to a case.  *Id.*  The report further avers that Raney was "argumentative" and "combative," making statements such as "let's rumble" and "I'm rocking out."  *Id.* at 2.  First aid

was administered to Raney by an emergency medical technician ("EMT") and he was transported to GBMC. *Id.* According to the report, the officers involved were not injured. *Id.* at 2, 4, 6.

### B. Defendants' Response

In their motion to dismiss, or alternatively, for summary judgment, the Defendant officers argue that their use of force was objectively reasonable and, alternatively, that they are entitled to qualified immunity. ECF No. 16-1 at 1.

Defendants state that on April 13, 2021, Raney was arrested in connection with an armed robbery that had taken place a few days before Raney's arrest. *Id.* at 1, ECF No. 16-2 at 3. Raney was taken to an interview room within the Public Safety Building following his arrest. ECF No. 16-2 at 15. At the time of his arrest, Raney was "wearing the same pants worn during the robbery" and thus the Defendants requested that he remove them and instead put on a "blue jump suit." *Id.* According to the case report, at that point, "Raney began fighting the detectives." *Id.*

Defendants submitted video evidence of the interaction between Raney and Defendants. ECF No. 16-4 (Certificate of Custodian of Records and Notice of Filing of Physical Exhibit as placeholder for DVD).[2] On the video, "Mr. Raney is seated in the upper-hand corner of the video with a dark-colored hoodie and white mask with one hand handcuffed to a bar; Det. Kerr is wearing a dark-colored collared non-hoodie with a black mask; [Cpl. Keel is] wearing a forest green hoodie with a blue mask; and Det. Adams is wearing a gray hoodie with a black mask." ECF No. 16-5 (Declaration of Cpl. Keel). Raney initially enters the interview room with both hands handcuffed behind his back. ECF No. 16-4 at 0:17:30. An officer removes the handcuffs and handcuffs one of Raney's hands to a bar next to a chair in the interview room. *Id.* at 0:21:01. Raney waits to

---

[2] There are two files on the DVD: (1) Axon_Interview_-_CIB_E_-_Motion.mp4; and (2) Axon_Interview_-_CIB_E_-_Strobe.mp4. This Memorandum will cite to Axon_Interview_-_CIB_E_-_Motion.mp4 because the events at issue are most clearly depicted from that angle. For citation purposes, the Court will cite to the time of the video file (using the file Axon_Interview_-_CIB_E_-_Motion.mp4). All times are approximate.

speak with the officers, during which time he informs staff he is going through withdrawal and does not feel well, and asks to go to the hospital. *Id.* at 1:15:39. He ultimately states that he does not need an ambulance, and continues to wait for the officers. *Id.* at 1:22:15. Two detectives, including Defendant Adams, enter, obtain demographic information, read Raney his *Miranda* rights, and begin to interview him. *Id.* at 1:28:00. Raney appears to become more and more frustrated throughout the course of the discussion, using profanity and saying things like: "ya'll gonna eat that dick up in court." *Id.* at 1:36:00. The interview is stopped and Raney requests an ambulance to take him to the hospital due to withdrawal symptoms. Raney then appears to go to sleep. *Id.* at 1:58:00—2:07:00.

Ultimately, Defendant Adams enters the room with a bag and a thin blue jump suit. *Id.* at 2:07:37. He advises Raney that he needs to retrieve Raney's pants as they are evidence related to identifying the suspect in the robbery investigation. *Id*. Raney is offered the blue jump suit to wear until he gets to the hospital. *Id*. For a couple minutes, Raney repeatedly declines the request and will not cooperate, indicating that he will cooperate if he is given an alternative pair of pants more substantial than the thin jumpsuit. *Id*. Det. Adams, Cpl. Keel, and Det. Kerr attempt to get Raney to comply; but he refuses without another clothing option. *Id*. Eventually, Det. Adams states "it's going to go one of two ways, we're going to take them from you or you can give them to us." *Id.* at 2:10:00. Thereafter, the Defendants approach Raney and attempt to handcuff his free hand to the bar. *Id.* at 2:10:16. Raney maneuvers his body to avoid complying with the request, and resists the Defendants' attempts to place his free hand in handcuffs. *Id*. During the ordeal, Raney is heard to scream and yell things like "I'm rocking out," while the officers respond with "stop resisting!" *Id.* at 2:10:30. The Officers hold Raney's arm, and kick with their feet to gain control of Raney. *Id*. Raney pulls his free hand away from the Defendants, at which point Det.

Kerr reaches for his hand and makes contact with Raney's head area. *Id.* at 2:11:00.  This is the only contact with Raney's head area during the incident.  Raney tells Kerr, "you just banged me in my eye because I am [B]lack."   Kerr responds, "you're resisting so stuff like this happens . . . . I didn't intentionally bang you."  *Id.*  Raney responds that Kerr, who is also Black, is a "fucking sell out."  *Id.*

Shortly thereafter, Raney complies.  *Id.* at 2:11:58.   Defendants handcuff Raney's free hand to the bar and remove his pants, leaving Raney in cotton shorts-length underwear, and leave the room.  *Id.*  Raney appears to go to sleep until the medic arrives.  *Id.* at 2:14:43.  Raney initially refuses medical assistance, but then later requests a medic for pressure in his eye.  *Id.* at 2:17:23. The same medic arrives upon request. *Id.*  Throughout the remainder of the video, Raney becomes very quiet and appears to sleep. When the ambulance arrives, medics are informed about his prior concerns related to withdrawal symptoms and remove Raney from the interview room on a stretcher.  *Id.* at 2:44:00

Raney was ultimately indicted for the armed robbery for which he was interviewed.  ECF No. 16-3 (docket entries for Baltimore County Circuit Court Case Number C-03-CR-21-001508). He entered an *Alford* plea and was found guilty.  *Id.*

## II.   Legal Standards

Defendants move to dismiss the complaint for failure to state a claim or, alternatively, for summary judgment.   The Court's review of a Rule 12(b)(6) motion typically is limited to the pleadings, documents attached to the complaint, and the parties' briefs.  *See* FED. R. CIV. P. 12(b)(6), 12(d); *see also* FED. R. CIV. P. 10(c).  The Court also may consider documents integral to and explicitly relied on in the complaint when their authenticity is not disputed.  *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015).  When the parties present, and

the Court considers, matters outside the pleadings on a Rule 12(b)(6) motion, the Court must treat the motion as one for summary judgment under Rule 56, and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." FED. R. CIV. P. 12(d).

Raney received sufficient notice that the motion may be treated as a summary judgment motion. The Court sent notice advising Raney that Defendants' motion could be construed as one for summary judgment and could result in the entry of judgment against him. ECF No. 18. Moreover, Defendants' motion, identifying summary judgment as possible relief, provided sufficient notice for Raney to have a reasonable opportunity to present relevant evidence in support of his position. *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). Indeed, the Court afforded Raney additional time to respond to Defendants' Motion. ECF No. 22. Thus, the Court is satisfied that Raney has been advised that Defendants' motion could be treated as one for summary judgment and that he was given a reasonable opportunity to present materials in response to the motion. The Court will resolve the motion under Rule 56.

Summary judgment is appropriate when the moving party establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). To meet its burden, the party must identify "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" in support of its position. FED. R. CIV. P. 56(c)(1)(A). Then, "[t]o avoid summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 205 (4th Cir. 2019) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  The opposing party must identify more than a "scintilla of evidence" in support of its position to defeat the motion for summary judgment.  *Id.* at 251.

On a motion for summary judgment, the Court "should not weigh the evidence." *Perkins*, 936 F.3d at 205 (quoting *Anderson*, 477 U.S. at 249).  However, if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," then summary judgment is proper.  *Id.* (quoting *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  In ruling on a motion for summary judgment, the Court "view[s] the facts and inferences drawn from the facts in the light most favorable to . . . the nonmoving party." *Perkins*, 936 F.3d at 205 (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 958 (4th Cir. 1996)).  Because Raney is self-represented, his submissions are liberally construed.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  The court, however, must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat v. Baltimore Ravens Football Club*, 346 F.3d 514, 526 (2003) (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

## III.   Analysis

At the time of this incident, Raney had been arrested and taken into custody as a suspect for an armed robbery.  A police officer's use of force against a subject violates that individual's Fourth Amendment right against unreasonable seizure if the officer's actions are not "'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989) (internal citation

omitted).  Evaluating the reasonableness of a particular use of force "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396.  In *Graham*, the Supreme Court specified three non-exhaustive factors for assessing the reasonableness of a particular application of force: (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to flee.  *Id.*; *see also Estate of Armstrong ex rel. Armstrong v. Village of Pinehurst*, 810 F.3d 892, 899 (4th Cir. 2016).  Courts must judge the reasonableness of a particular use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.

To state a claim of excessive force in violation of his Fourteenth Amendment rights as a pre-trial detainee, Plaintiff may prevail upon evidence that "the use of force is deliberate – *i.e.*, purposeful or knowing." *Kingsley v. Hendrickson*, 576 U.S. 389, 395 (2015).  Plaintiff's claim need not detail a subjective element of his alleged assailant's subjective state of mind; rather, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 396, *see also Dilworth v. Adams,* 841 F.3d 246, 255 (4th Cir. 2016).  Objective reasonableness "turns on the 'facts and circumstances of each particular case.'" *Id*. at 397, quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989).

Here, even viewing the evidence in the light most favorable to Raney, the Court cannot find that the force used against Raney was objectively unreasonable.  The officers had a legitimate interest in obtaining Raney's pants from him, as the pants constituted evidence for an on-going investigation and prosecution of an armed robbery.  Although not preferred by Raney, the officers did provide Raney with alternative clothing to utilize after removing his pants.  Raney was given several opportunities to remove the pants himself; however, he refused to comply with the officers'

repeated requests.  The video evidence does not reflect an unreasonable use of force.  Rather, it depicts the officers attempting to restrain Raney in order to obtain critical evidence from him following several opportunities/requests for Raney to peaceably comply.  Nothing in the video suggests or otherwise supports a conclusion that Defendant Kerr punched Raney with a closed fist, as Raney alleges.  Rather, the video depicts Kerr making incidental contact with Raney's face during the effort to obtain material evidence (the pants) that Raney refused to provide.  Similarly, the evidence submitted, viewed in the light most favorable to Raney as the non-movant, fails to support an objective conclusion that the force Defendants used to restrain Raney was excessive or objectively unreasonable given the circumstances.  As such, Defendants are entitled to summary judgment.[3]

## IV.    Conclusion

Based on the foregoing, and by separate Order which follows, Defendants' Motion, construed as one for summary judgment, is granted.  Summary judgment shall be entered in favor of Defendants.

/S/

October 15, 2023

_____
Julie R. Rubin
United States District Judge

---

[3] Having found no constitutional violation, the Court need not address Defendants' qualified immunity defense.